UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARTIN DALE,

               Plaintiff,

      v.

L'OREAL USA, INC.,

               Defendant.

**MEMORANDUM & ORDER**
22-CV-00427 (HG) (LB)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff has asserted several claims against Defendant, his former employer: (i) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (ii) fraudulent inducement related to Plaintiff's acceptance of an early retirement package; (iii) negligent misrepresentation related to Plaintiff's acceptance of that same package; and (iv) breach of contract related to an agreement between Plaintiff and Defendant regarding Plaintiff's work as a contractor after his retirement. ECF No. 14. Defendant has moved to dismiss all of these claims. ECF No. 15. For the reasons set forth below, the Court grants Defendant's motion to dismiss in full because each of Plaintiff's causes of action fails to state a claim. Since Plaintiff has already once amended his complaint and has provided no information indicating that he can make new allegations that cure the issues with his current complaint, the Court does not grant Plaintiff leave to amend his complaint again.

## FACTUAL BACKGROUND

      Plaintiff started working for Defendant in 1994 as its "Vice President of Education" after previously working for a different L'Oreal affiliate based in the United Kingdom. ECF No. 14 ¶ 9. Plaintiff alleges that in January 2020, members of the Defendant's Human Resources department approached him about possibly retiring early in exchange for an agreement to work

as a contractor for Defendant—a post-employment arrangement that Plaintiff alleges Defendant typically did not permit. *Id.* ¶ 11. Plaintiff also alleged, in a charge of discrimination filed with the EEOC prior to this lawsuit, that around the same time, several members of Defendant's "senior management" had warned Plaintiff that "if [he] didn't agree to early retirement at th[at] time, a restructure was going to happen in the coming months, and [he] would lose [his] job anyway without the benefits." *Id.* at 16.

Plaintiff alleges that he agreed to the contractor arrangement and that it was memorialized in a contract that the parties executed in April 2020 (the "Contractor Agreement"). ECF No. 14 ¶ 15.[1] Plaintiff alleges that, regardless of the written terms of the Contractor Agreement, Defendant's employees assured him that the agreement guaranteed Plaintiff a specific number of working days and a specific amount of pay. *Id.* ¶¶ 13–14. Plaintiff interpreted the Contractor Agreement, along with these representations, to mean that he would receive "18 months of guaranteed employment" after his retirement, and Plaintiff asserts that he would not have agreed to retire early without this supposed guarantee. *Id.* ¶ 15. The Contractor Agreement stated that Plaintiff would begin working as a contractor in July 2020. *Id.* ¶¶ 16–17.

Plaintiff's complaint alleges several times that he agreed to early retirement. ECF No. 14 ¶¶ 15, 22–23, 33–35, 40, 42–43. However, the complaint neglects to mention that the terms of Plaintiff's early retirement were memorialized in contracts that Plaintiff signed in March 2020—prior to signing the Contractor Agreement—entitled Confidential Separation Agreement and Release of All Claims (the "Separation Agreement") and Supplemental Release Agreement (the "Supplemental Release"). ECF No. 15-5. Those agreements, as consideration for Plaintiff

---

[1]     Plaintiff's complaint and the parties' briefs refer to this contract as the "Matrix Agreement" because the division of L'Oreal for which Plaintiff was planning to work as a contractor is called "Matrix." *See* ECF No. 14 ¶ 13; *id.* at 19.

voluntarily resigning as an employee, provided him one year of his base salary as a severance payment, additional health insurance and other insurance coverage for one year, and an additional "special bonus" of $10,000 to assist with obtaining health insurance coverage thereafter.  *Id.* at 2.  In both agreements, Plaintiff released all then-existing claims against Defendant, including ADEA claims.  *Id.* at 3–4, 11.

After Plaintiff had signed the Separation Agreement, Supplemental Release, and Contractor Agreement, he waited for several months for his contractor work to commence on its anticipated start date of July 2020.  ECF No. 14 ¶ 16.  Plaintiff alleges that in June 2020, an employee from Defendant's Human Resources department told him that Defendant would need to "delay" the start date of Plaintiff's contractor work, but the employee did not raise any concerns about the overall viability of the contractor arrangement.  *Id.* ¶ 19.  In July 2020, however, the same person allegedly told Plaintiff that one of the senior members of Defendant's "Education" department had been terminated and that Defendant would not be moving forward with Plaintiff's contractor work.  *Id.*  Defendant never had Plaintiff provide any services as a contractor, and Defendant never paid him for the services that Defendant had contracted Plaintiff to perform.  *Id.* ¶¶ 30–31.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d

---

[2]   Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

3

Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Claims sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b)," which means that Plaintiff "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (affirming dismissal of fraud and negligent misrepresentation claims).

## DISCUSSION

   I.   **Plaintiff Fails to Allege Discriminatory Intent and Therefore Fails to State an ADEA Claim**

      A.   *The Court May Consider the Parties' Separation Agreement and Supplemental Release*

As a threshold issue, the Court finds that it may consider as part of Defendant's motion to dismiss the Separation Agreement and Supplemental Release even though those materials were not attached to Plaintiff's complaint. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). However, if these circumstances are not satisfied, the court may also consider a document "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.*

The parties' Separation Agreement and Supplemental Release are integral to Plaintiff's complaint, and Plaintiff's claims rely on the terms and effects of those agreements. Plaintiff alleges multiple times in the complaint that he "accepted" Defendant's offer of early retirement.

ECF No. 14 ¶¶ 15, 22–23, 33–35, 40, 42; *see also id.* ¶ 43 (stating that Plaintiff "agreed to early retirement").  He expressly states, "[Plaintiff] accepted [Defendant's] offer of the 18-month subcontractor position in exchange for taking early retirement from Defendant." *Id.* ¶ 15.  Plaintiff then attached to his complaint only the Contractor Agreement as if it comprises the entirety of the parties' agreement regarding Plaintiff's early retirement.  However, the Separation Agreement and Supplemental Release represent the terms on which Plaintiff "accepted" and "agreed to" early retirement.  *See id.* ¶¶ 15, 43; *see also Ogbolu v. Trs. of Columbia Univ.*, No. 22-419-cv, 2023 WL 2579044, at *2 n.1 (2d Cir. Mar. 21, 2023) (finding that agreement containing releases that was referenced but not attached to plaintiff's complaint "was integral to the complaint and thus properly considered by the district court as part of the motion to dismiss").  The Court, however, declines to consider other documents that Defendant included in its motion to dismiss—specifically emails between Plaintiff and Defendant's employees, along with the application materials that Plaintiff submitted in connection with his acceptance of early retirement.  *See* ECF Nos. 15-4, 15-5.  The Court does not deem these documents integral to Plaintiff's claims.

Considering the Separation Agreement and Supplemental Release vindicates the exact purpose for which the Second Circuit has authorized district courts to consider documents integral to a complaint but not provided by the plaintiff:  to "prevent[] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  Considering such documents is particularly appropriate in circumstances where "a contract or other legal document contain[s] obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of

5

the plaintiff's claim—was not attached to the complaint." *Id.* The Second Circuit has also warned plaintiffs that "fail[ing] to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (considering materials provided by defendant that were not attached to plaintiff's complaint).

The Separation Agreement and Supplemental Release also meet the remaining criteria necessary to qualify as integral documents. The Second Circuit has explained that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Foreman*, 19 F.4th at 106. Plaintiff has not disputed the authenticity of either the Separation Agreement or Supplemental Release and has instead argued that Defendant cannot authenticate the documents through a declaration by Defendant's counsel because Defendant's counsel "does not claim to have any personal knowledge of the documents or the circumstances of their negotiation." ECF No. 16 at 16–17. But that is not the applicable standard for authentication.

Rule 901 requires a party offering a particular document only to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Rule 901 does not erect a particularly high hurdle." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016). Defendant has cleared that hurdle under these circumstances. *See Superior Biologics NY, Inc. v. Aetna, Inc.*, No. 20-cv-5291, 2022 WL 4110784, at *5 (S.D.N.Y. Sept. 8, 2022) (considering contract provided by defendant on motion to dismiss even though it was authenticated by someone other than the contract's author).

6

B.   *Plaintiff's ADEA Claim Fails on the Merits*

Normally, for a release of common law claims, once a defendant has presented the court with an applicable release, the burden falls on the plaintiff to prove that the release was not voluntary and should be voided. *Ogbolu v. Trs. of Columbia Univ.*, No. 21-cv-1697, 2022 WL 280934, at *3 (S.D.N.Y. Jan. 31, 2022), *aff'd*, No. 22-419-cv, 2023 WL 2579044 (2d Cir. Mar. 21, 2023). However, for releases of ADEA claims, "[t]he burden of proving that a claimed waiver was knowing and voluntary within the meaning of the [ADEA] is on the party asserting the validity of the waiver." *Sowe v. Pall Corp.*, 778 F. App'x 20, 22 (2d Cir. 2019) (granting summary judgment in favor of employer). Additionally, for a waiver or release of an ADEA claim to be considered "knowing and voluntary," the ADEA requires the employer to provide the employee with "certain information" specified in the ADEA. *Estle v. Int'l Bus. Machs. Corp.*, 23 F.4th 210, 213 (2d Cir. 2022).[3] "[T]he absence of even one of the [ADEA's] requirements

---

[3]   The ADEA specifies that an agreement releasing ADEA claims in connection with a voluntary retirement program must meet the following criteria: (i) the agreement must be "written in a manner calculated to be understood by [the employee], or by the average [employee] eligible to participate"; (ii) the waiver must "specifically refer[] to rights or claims arising under [the ADEA]"; (iii) the agreement must provide that "the [employee] does not waive rights or claims that may arise after the date the waiver is executed"; (iv) the employee must receive "consideration in addition to anything of value to which the [employee] already is entitled"; (v) the employee must be "advised in writing to consult with an attorney prior to executing the agreement"; (vi) the employee must receive "a period of at least 45 days within which to consider the agreement"; and (vii) the agreement must "provide[] that for a period of at least 7 days following the execution of such agreement, the [employee] may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." 29 U.S.C. § 626(f)(1). Finally, the agreement must identify for the employee "any class, unit, or group of individuals covered by [the voluntary retirement program], any eligibility factors for such program, and any time limits applicable to such program," along with "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H); *see also Collison v. Bank of N.Y. Mellon*, No. 17-cv-809, 2018 WL 2357257, at *5 (S.D.N.Y. Jan. 30, 2018) (describing the same requirements for release of ADEA claims).

invalidates a waiver." *McCormack v. IBM*, 145 F. Supp. 3d 258, 270 (S.D.N.Y. 2015) (denying motion for judgment on the pleadings to dismiss ADEA claims based on release).

Even though the Court finds it appropriate to consider the parties' Separation Agreement and Supplemental Release, the Court cannot conclude at the motion to dismiss stage that Plaintiff's release of any ADEA claims pursuant to that agreement was knowing and voluntary, pursuant to the specific requirements of the ADEA. The Separation Agreement appears to comply with many of the ADEA's requirements. However, the Court cannot decide "without discovery" whether the list of affected employees that Defendant provided as an exhibit to the Separation Agreement was accurate and conveyed all of the information required by the ADEA. *See McCormack*, 145 F. Supp. 3d at 271–72 (denying motion for judgment on the pleadings for same reason).

Regardless of whether Plaintiff released his ability to bring an ADEA claim, however, his claim fails on the merits because "to defeat a motion to dismiss or a motion for judgment on the pleadings, an ADEA plaintiff must plausibly allege that he would not have been terminated but for his age," and Plaintiff has failed to do that. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021). "[I]t is not sufficient for a plaintiff to show that age was simply a motivating factor in the employer's adverse action. Instead, the ADEA's requirement that an employer took adverse action 'because of' age requires that age was the 'reason' that the employer decided to act." *Id.* at 302–03. A conclusory allegation that Plaintiff was terminated because of his age is insufficient; he "must plead facts plausibly suggesting that age was the reason that [his employer] decided to act." *Id.* at 306. In assessing whether a plaintiff has satisfied this requirement, the Second Circuit has expressly said that the "more lenient" pleading standard that applies to race discrimination claims under Title VII of the Civil Rights Act, which

8

establishes that a plaintiff "need only plead enough facts to give plausible support to a minimal inference of discriminatory motivation," does not apply to ADEA claims.  *Id.* at 303 n.5.

Plaintiff's sole allegation of age discrimination, made on information and belief, is that "[Defendant] engaged and utilized lower-cost younger workers to perform [Plaintiff's] tasks after he was induced to leave his job early."  ECF No. 14 ¶ 25.  This allegation is insufficient because "the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."  *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32–33 (2d Cir. 2016) (affirming dismissal of ADEA claims pursuant to 12(b)(6)).  Early retirement programs are not automatically discriminatory because the Supreme Court has expressly held that termination decisions made "on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age" do not give rise to an ADEA claim.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608–09 (1993).  And the Second Circuit has held that an allegation, made "on information and belief," that a plaintiff "was replaced by a younger employee" is insufficient to allege discrimination where, as here, the plaintiff "alleges no facts that would support an inference that this decision was made because of age."  *Marcus*, 661 F. App'x at 32–33; *see also Faughnan v. Nassau Health Care Corp.*, No. 19-cv-3171, 2021 WL 1566138, at *4 (E.D.N.Y. Mar. 18, 2021) (granting motion to dismiss age discrimination claims because plaintiff "failed to plausibly allege discriminatory motive" since she "acknowledge[d] that she and others were terminated because positions were being eliminated" and merely alleged that her employer "hired a younger person ten months later").

II.  **Plaintiff's Contract Did Not Provide Him with Guaranteed Payment Regardless of How Much He Worked**

Plaintiff's breach of contract claim must be dismissed because, contrary to Plaintiff's contentions, the Contractor Agreement did not guarantee him an 18-month stream of payments

9

regardless of whether Defendant asked him to perform any work pursuant to the agreement. "At the motion to dismiss stage, a district court may dismiss a breach of contract claim," but it may do so "only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016); *see also Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019) (affirming dismissal and explaining that "the District Court did not err in interpreting the contract in addressing a motion to dismiss" because the contract was "unambiguous[]"). "[T]he question of whether a written contract is ambiguous is a question of law for the court, and where the contract is unambiguous, its meaning is likewise a question of law for the court to decide." *Roberts v. Weight Watchers Int'l, Inc.*, 712 F. App'x 57, 59 (2d Cir. 2017) (dismissing breach of contract claim). When making this assessment "[o]n a motion to dismiss a breach of contract claim, [the Court] should resolve any contractual ambiguities in favor of the plaintiff." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015).

      Despite the Court's obligation to draw all inferences in Plaintiff's favor at this stage, contracts "should be read as a whole, and every part will be interpreted with reference to the whole." *Global Reinsurance Corp. of Am. v. Century Indemnity Co.*, 91 N.E.3d 1186, 1193 (N.Y. 2017). Once a court has determined that a contract is not ambiguous, "the court is to consider its particular words not in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Roberts*, 712 F. App'x at 59. When dealing with employment disputes, "[i]n New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party," and an employee can rebut this presumption only "by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will." *Hodge v. Abaco, LLC*, 825 F.

10

App'x 46, 47 (2d Cir. 2020) (affirming dismissal of claim that offer letter guaranteed plaintiff five years of employment).

Based on the unambiguous terms of the entire Contractor Agreement, Defendant was entitled to cancel Plaintiff's contractor position at any time, and once Defendant did so, Plaintiff was neither required to perform any work nor entitled to receive any pay. Plaintiff's contrary interpretation of the Contractor Agreement hinges on the following two sentences: "Notwithstanding anything to the contrary set forth in this Agreement, [Defendant] will not be obligated to produce, release or otherwise use the Provided Content or make use of any rights granted herein. [Defendant's] only obligation to [Plaintiff] hereunder shall be to pay [Plaintiff] as set forth herein, provided that [Plaintiff] is not in material breach of this Agreement." ECF No. 14 at 25 § 19(e). The title of this subparagraph is "Pay or Play." *Id.* Plaintiff asserts that "pay or play" is a standard term used in the entertainment industry that is widely understood to mean that an artist is entitled to get paid solely for making himself available to perform work regardless of whether he ends up performing any work at all. *See* ECF No. 16 at 18–20.

Plaintiff's interpretation of this provision is inconsistent with the payment terms in the rest of Contractor Agreement, which the "Pay or Play" provision that Plaintiff favors does not supersede because it says that Plaintiff would be paid "as set forth" in the remainder of the agreement. *See* ECF No. 14 at 25 § 19(e). The agreement provided that "[Defendant] will pay [Plaintiff] the fees specified in each SOW [*i.e.*, the Statement of Work attached to the agreement] . . . as [Plaintiff's] sole and complete compensation for all services, deliverables and intellectual property rights provided by [Plaintiff] under this Agreement." *Id.* at 21 § 7. The attached Statement of Work included a section stating that Plaintiff would be paid on a monthly basis for work performed during various "service days" throughout an 18-month period "provided that

11

[Plaintiff] fully and completely performs all of the respective Services and obligations hereunder." *Id.* at 27 § D(i). In addition to this provision stating that Plaintiff would be paid only if he performed services, the Contractor Agreement also stated that "[Defendant] may at any time and for any reason . . . modify, suspend, or terminate the Program, or [Plaintiff's] participation in it." *Id.* at 23 § 12.

Collectively, the terms of the Contractor Agreement established that Plaintiff would be entitled to payment if he performed services but that Defendant would have no obligation to create content that actually featured Plaintiff's artistic work. This is a key aspect of "pay or play" agreements in the cases that plaintiff cites because artists typically benefit financially in the long term, albeit indirectly through future projects, if their work is featured publicly. *See, e.g.*, *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 124–25 (1st Dep't 2009) (holding that news company was required to pay anchor for his work but not required to broadcast any of his reporting).[4] Although the Second Circuit has previously interpreted a "pay or play" contract provision to contain the extra obligation that Plaintiff advocates for—*i.e.*, payment regardless of whether the person performs any work—that contract contained express language stating that the actor would

---

[4] Most of the decisions that Plaintiff cites interpreting so called "pay or play" agreements do not actually provide the applicable contract language, which eliminates their potential persuasive value. *See VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.*, 565 F. Supp. 916, 919–20 (S.D.N.Y. 1983) (accepting testimony from defendant's president that the "pay or play" provision "mean[t] that [an actor] was to be paid for his services whether or not the film went forward" but not providing the applicable contract language); *Schechner v. CBS Broadcasting, Inc.*, No. 08-cv-5049, 2010 WL 2794374, at *1 (N.D. Cal. July 15, 2010) (describing contracts at issue as "pay or play agreements" that allowed defendant to "choose to require the performance of the employee or discharge its obligations under the agreement by paying the contracted compensation through the term of the agreement" but not providing the applicable contract language). The Court disagrees with Plaintiff that all contract provisions colloquially referred to as "pay or play" provisions require an employee or contractor to get paid even if he performs no work; whether the provision should be interpreted in that manner depends on how the provision fits with the other terms of contract.

12

be paid "whether or not the Artist is actually performing." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998). No such provision exists in Plaintiff's agreement with Defendant.[5] In the absence of such language in Plaintiff's "pay or play" provision, the remaining provisions allowing Defendant to terminate the contract and stating that Plaintiff would get paid only if he performed work control.

This interpretation does not render the Contractor Agreement "illusory due to lack of mutual obligation," as Plaintiff contends. *See* ECF No. 16 at 20. Under New York law, "[t]he fact that [a contract] [i]s terminable at will does not make the agreement illusory." *City of New York v. Shellbank Rest. Corp.*, 95 N.Y.S.3d 60, 62 (1st Dep't 2019). Instead, a contract is illusory only if it is "an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 562 (N.Y. 2017). That test might be satisfied if Defendant were arguing that it was entitled to terminate the Contractor Agreement and withhold payment after Plaintiff had already performed work. Under these circumstances, however, in which Defendant terminated the contract before Plaintiff had done any work—leaving him free to obtain work elsewhere—

---

[5]     Additionally, the actor in *This Is Me* had agreed "to turn down other opportunities in film, television, and stage, and commit nearly a year to" working on the defendants' play regardless of how long theaters agreed to show the play. *This Is Me*, 157 F.3d at 141. Although the exclusive employment arrangement supported a mandatory payment obligation in that case—and reinforced the already explicit contract language—Plaintiff's contract required no such exclusivity. Instead, multiple provisions of the Contractor Agreement make clear that Plaintiff could take on work with other companies, so long as Plaintiff disclosed that work to Defendant and those companies were not Defendant's competitors. *See* ECF No. 14 at 24 § 13 ("[Plaintiff] will disclose any potential services to other professional product companies and may be required to sign additional [non-disclosure agreements]. Any services provided should not be in direct competition to [Defendant's] education programs."); *id.* at 20 § 1(b) ("All Service Days shall be scheduled on dates and locations as agreed to by the parties, subject to [Plaintiff's] prior professional commitments.").

Defendant's ability to terminate the Contractor Agreement does not render the agreement illusory.

### III. Plaintiff Fails to State Claims for Fraudulent Inducement or Negligent Representation

Plaintiff alleges that Defendant fraudulently induced him into accepting Defendant's early retirement package in March 2020 by promising him that he could receive 18 months of income as a contractor through the Contractor Agreement that Plaintiff later signed in April 2020. ECF No. 14 ¶ 40. Specifically, Plaintiff alleges that Defendant represented that it "had the ability and intent to commit the resources necessary to engage [Plaintiff] as a subcontractor for the period and salary promised." *Id.* ¶ 41. Plaintiff asserts that he relied on this promise and that he would not have accepted Defendant's voluntary retirement package without it. *Id.* ¶ 44. In the event that these representations were not made fraudulently, Plaintiff alleges that they were made negligently and give rise to a claim for negligent misrepresentation. *Id.* ¶¶ 33–39.

"To allege a cause of action based on fraud, [P]laintiff must assert a misrepresentation or a material omission of fact which was false and known to be false by [D]efendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1163 (N.Y. 2017). When a plaintiff's claim is based on a fraudulent omission of a material fact, rather than a materially false statement, "in addition to scienter, reliance, and damages, there must be a showing that there was a fiduciary or confidential relationship between the parties that would impose a duty to disclose material information." *Cantor v. Villucci*, 181 N.Y.S.3d 644, 646 (2d Dep't 2023) (affirming dismissal of claims that defendant's CEO fraudulently induced plaintiff to enter into employment contract).

14

Plaintiff's claim for fraudulent inducement fails because an allegedly fraudulent statement must be a misrepresentation of present fact and not an "opinion[] or prediction[] of something which is hoped or expected to occur in the future." *Id.* (holding that statements about expected future salary increases were not fraudulent misrepresentations).[6] To the extent Plaintiff's claim is based on omitted information rather than an express representation that Defendant had funding available for his contractor position, his claim fails because he cannot allege that his employee-employer relationship with Defendant was a fiduciary relationship. *Id.*; *see Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (affirming dismissal of "claim of fraudulent omission" because "the complaint fail[ed] to allege that [defendant] owed a fiduciary duty to [plaintiff]").

In order to state a claim for fraudulent inducement based on representations related to future events, Plaintiff must allege that Defendant promised to enter into a contractor relationship "with a preconceived and undisclosed intention of not performing." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 210 (2d Cir. 2018). But Plaintiff has not done this—he has not alleged that, at the time Defendant offered him early retirement and proposed a post-retirement contractor position, Defendant already knew that it could not fund the position. Instead, Plaintiff asserts that Defendant's representations were false merely because Defendant "was aware of the

---

[6] To the extent that Plaintiff seeks to allege that Defendant fraudulently induced him to enter into the Contractor Agreement—rather than to sign the Separation Agreement and accept early retirement—his fraudulent inducement claim would similarly fail because it is still based on a statement of future intent. Plaintiff's claim would also, however, fail because Plaintiff could not have reasonably relied on a promise that the contractor position would provide him with 18 months of guaranteed income because, for the reasons explained in Section II, that alleged representation was inconsistent with the express written terms of the Contractor Agreement. *Sklair v. Mike Bloomberg 2020, Inc.*, No. 20-cv-2495, 2022 WL 889849, at *4 (S.D.N.Y. Mar. 25, 2022) (dismissing claims that plaintiffs were fraudulently induced into accepting employment because "the alleged representations of guaranteed employment through November 2020 are contradicted by the at-will provision of [p]laintiffs' offer letters").

Covid-19 pandemic" "when [Plaintiff] agreed to early retirement in or about March 2020." ECF No. 14 ¶ 43. Plaintiff asks the Court to infer that since Defendant knew about COVID-19 in March 2020, Defendant must therefore have known that it would be unable to fund Plaintiff's contractor position in July 2020—the time when Plaintiff was scheduled to start work. *Id.* Plaintiff's own allegations contradict this inference because he alleges that he was first informed in June 2020, after signing both his Separation Agreement and the Contractor Agreement, that his start date would be delayed and that he was only informed later, in July 2020, that the subcontractor position was being terminated. *Id.* ¶ 19. Therefore, according to Plaintiff's own allegations, Defendant's intentions to fund Plaintiff's contractor position changed over time; Defendant had not decided from the outset not to fund the position.

Plaintiff's claim for negligent misrepresentation also fails. "[A] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading*, 944 N.E.2d at 1109; *see Feldman v. Byrne*, 178 N.Y.S.3d 525, 529–30 (2d Dep't 2022) (describing same elements). "[A]s in the case of fraud, an alleged misrepresentation must be factual and not promissory or related to future events." *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187–88 (2d Cir. 2004). Since as explained above, Defendant's alleged misrepresentations are based on future events rather than present facts, his negligent misrepresentation claim fails. *Fleisig v. ED&F Man Cap. Markets, Inc.*, No. 19-cv-8217, 2020 WL 3127875, at *5 (S.D.N.Y. June 12, 2020) (dismissing negligent misrepresentation claim because the alleged misrepresentations at issue "relate[d] entirely to future events").

16

Plaintiff's negligent misrepresentation claim fails for the additional reason that he cannot satisfy the first element—the existence of a special relationship between him and Defendant. "[A] special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Feldman*, 178 N.Y.S.3d at 530 (affirming dismissal of negligent misrepresentation claim). Based on that principle, "[c]ourts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation." *Fallman v. Hotel Insider Ltd.*, No. 14-cv-10140, 2016 WL 316378, at *9 (S.D.N.Y. Jan. 15, 2016) (granting motion to dismiss negligent misrepresentation claim brought in connection with employee's termination). *See also Pauwels v. Deloitte LLP*, No. 19-cv-2313, 2020 WL 818742, at *14 (S.D.N.Y. Feb. 19, 2020) (dismissing negligent misrepresentation claim because neither "[a]n employer-employee relationship" nor "a consultancy" was "fiduciary in nature and thus does not constitute a special relationship"); *Zakrzewski v. Luxoft USA, Inc.*, 58 N.Y.S.3d 310, 312 (1st Dep't 2017) (affirming dismissal of negligent misrepresentation claim related to employee's termination because plaintiff "d[id] not allege a duty independent of [his] employment agreement"). Since Plaintiff was no more than an employee negotiating his resignation and a potential post-employment contractor position with his employer, no special relationship existed between Plaintiff and Defendant.

## IV.     The Court Declines to Grant Plaintiff Leave to Amend

The Court denies Plaintiff leave to amend his complaint any further. The Court already gave Plaintiff an opportunity to amend his complaint after Defendant requested a pre-motion conference and previewed the reasons why Plaintiff's complaint should be dismissed. ECF No. 11, 12; *see also* ECF Order dated May 24, 2022. Plaintiff took advantage of that opportunity by filing an amended complaint, *see* ECF No. 14, but his amendments did not result in a complaint that can withstand dismissal for the reasons explained above.

Further amendments would be futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend). Amendment would be futile with respect to Plaintiff's contract claim because nothing that Plaintiff could allege would change the language of the Contractor Agreement. Amendment would also be futile with respect to Plaintiff's fraud and negligent misrepresentation claims because Plaintiff's alleged misrepresentations are inherently based on predictions about future events—rather than statements of present fact—and the necessary fiduciary or other special relationship does not exist to support a claim for negligent misrepresentation or fraudulent omission.

Plaintiff states that he could amend the portion of his complaint that asserts ADEA claims "to allege specifically that his job duties were re-assigned to younger employees" rather than making that allegation on information and belief. *See* ECF No. 16 at 27. However, such an amendment would do nothing to support Plaintiff's assertion that Defendant offered him voluntary retirement for a discriminatory purpose because, as explained above in Section I.B, the mere fact that an employee is replaced by a younger employee does not give rise to an inference of age discrimination. Plaintiff's proposed amendment of his ADEA-related allegations therefore "gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).

**CONCLUSION**

For the reasons set forth above, the Court GRANTS in full Defendant's motion to dismiss Plaintiff's amended complaint with prejudice. ECF No. 15. The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

                                             */s/ Hector Gonzalez*
                                             HECTOR GONZALEZ
                                             United States District Judge

Dated: Brooklyn, New York
         June 13, 2023